# United States District Court

_____SOUTHERN_____ DISTRICT OF _____NEW YORK_____

ZURICH NORTH AMERICA

    and

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY,

          Plaintiffs,

      V.

DAVID CROSS and DIANA CROSS,

          Defendants.

**SUMMONS IN A CIVIL ACTION**

**Case Number:**

08 CIV 6432

**TO:**   DAVID CROSS         DIANA CROSS
        5500 Ranger Dr.      101 Linda Lane
        Rockwall, Texas 75032    Rockwall, Texas 75032

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY:

CANFIELD, MADDEN & RUGGIERO, LLP
1461 Franklin Avenue
Garden City, New York 11530
(516) 294-4180

an answer to the complaint which is served on you with this summons, within twenty (20) days

after service of this summons upon you, exclusive of the day of service. If you fail to do so,

judgment by default will be taken against you for the relief demanded in the complaint. Any

answer that you serve on the parties to this action must be filed with the Clerk of this Court

within a reasonable time after service.

**J. MICHAEL McMAHON**
CLERK

_____
(By) DEPUTY CLERK

JUL 18 2008
DATE

## RETURN OF SERVICE

Service of the Summons and Complaint was made by me        Date

NAME OF SERVER        TITLE

Check one box below to indicate appropriate method of service

    ☐     Served personally upon the defendant.  Place where served: _____

    ☐ :     Left copies thereof at the defendant's dwelling house or usual place of abode
           with a person of suitable age and discretion then residing therein.  Name of
           person with whom the summons and complaint were left: _____

    ☐     Returned unexecuted: _____

    ☐     Other (specify): _____

### STATEMENT OF SERVICE FEES

TRAVEL          SERVICES          TOTAL

### DECLARATION OF SERVER

     I declare under penalty of perjury under the laws of the United States of America that
the foregoing information contained in the Return of Service and Statement of Service is true
and correct.

Executed on _____
             Date             Signature of Server

                                         Address of Server

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZURICH NORTH AMERICA<br><br>and<br><br>AMERICAN GUARANTEE AND<br>LIABILITY INSURANCE COMPANY<br><br>        Plaintiffs,<br><br>    v.<br><br>DAVID CROSS<br><br>and<br><br>DIANA CROSS<br><br>        Defendants. | Civil Action No. : |

RECEIVED
JUL 18 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT FOR BREACH OF CONTRACT OF INDEMNITY; EXONERATION AND SPECIFIC PERFORMANCE; AND FOR DECLARATORY RELIEF

COMES NOW Plaintiffs, ZURICH NORTH AMERICA, a New York corporation,

("ZURICH") and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a

New York corporation, ("AGLIC") (collectively, the "PLAINTIFFS" or the "SURETIES") and

for causes of action against Defendants, DAVID CROSS, a citizen of the state of Texas and

DIANA CROSS, a citizen of the state of Texas, (collectively, the "DEFENDANTS" or the

"INDEMNITORS") complain and allege as follows:

## JURISDICTION

1.      This court has jurisdiction and venue. These proceedings are instituted pursuant to the provisions of 28 U.S.C. §1332 in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity exists among the parties.

The claims for relief herein alleged are for breach of a contract of indemnity, exoneration and specific performance of the indemnity agreement, declaratory relief, and other equitable relief affecting property and involving persons within the jurisdiction of this Court.

Venue is proper in this district pursuant to a valid forum selection clause included in the General Indemnity Agreement between ZURICH, AGLIC, ICE CONTRACTORS, INC. ("ICE CONTRACTORS"), DAVID CROSS and DIANA CROSS, out of which this litigation arises.

## THE PARTIES

2.      ZURICH is, and at all times mentioned herein was, a corporation organized under the laws of the State of New York with its principal place of business in Schaumburg, Illinois. At all times relevant hereto, ZURICH has been engaged in the business of providing surety bonds in the Commonwealth of Virginia and the State of Texas.

3.      AGLIC is, and at all times mentioned herein was, a corporation organized under the laws of the State of New York with its principal place of business in New York, New York. At all times relevant hereto, AGLIC had been engaged in the business of providing surety bonds in the Commonwealth of Virginia and the State of Texas among other jurisdictions.

4.      On information and belief, DAVID CROSS is, and at all times mentioned herein was, a citizen of the state of Texas. On information and belief, DAVID CROSS is engaged in the business of construction, engineering and remediation.

5.   On information and belief, DIANA CROSS is, and at all times mentioned herein was, a citizen of the state of Texas. On information and belief, DIANA CROSS is engaged in the business of construction, engineering and remediation.

## FIRST CAUSE OF ACTION

### (*Breach of Contract of Indemnity*)

6.   PLAINTIFFS hereby incorporate by reference Paragraphs 1 through 5 as though fully set forth herein.

7.   On or about January 31, 2003, a General Indemnity Agreement ("Indemnity Agreement") was executed by DAVID CROSS and DIANA CROSS, as Indemnitors, for the purpose of obtaining and securing surety bonds in connection with performance or payment of certain contracts entered into by said Indemnitors (or by the the Principal, ICE CONTRACTORS). A true and correct copy of said Indemnity Agreement is attached hereto as **Exhibit "A"** and is incorporated by this reference as though fully set forth herein.

8.   The Indemnity Agreement provides that DAVID CROSS and DIANA CROSS, their heirs, executors, administrators, successors and assigns, jointly and severally, agree to exonerate, indemnify and hold harmless ZURICH and AGLIC against any and all liability cost, damages, fees of attorneys, engineers and/or other expenses which the Sureties may sustain or incur by reason of, or in consequence of the execution of bonds on behalf of any one or more of the Indemnitors to the Indemnity Agreement, including, but not limited to, ICE ONTRACTORS.

9.   At the request of the Indemnitors and in reliance upon the aforesaid Indemnity Agreement, on or about January 28, 2003, AGLIC, as surety, executed and delivered a material Performance Bond ("Performance Bond") naming ICE CONTRACTORS as principal, and Centex-Gilford, a Joint Venture ("CENTEX-GILFORD") as obligee. The penal sum of the bond

is $647,800.00. The Performance Bond provides for performance pursuant to subcontract No. 042-DULAIR-020500-5 dated January 20, 2003 for work at the Main Terminal Rehab and Southeast Basement Package 7, East Basement Extension Solicitation, Number 1-99-C099; Washington Dulles International Airport ("SUBCONTRACT" or "BONDED CONTRACT") in the event that ICE CONTRACTORS is declared to be in default. A true and correct copy of the Performance Bond is attached hereto as **Exhibit "B"** and incorporated herein by this reference as though fully set forth herein.

10.    On or about April 30, 2004, CENTEX-GILFORD advised AGLIC and ICE CONTRACTORS of the latter's alleged default under the Performance Bond and asserted a claim against AGLIC on the Performance Bond for new agreements with completion contractors to perform remaining work under the SUBCONTRACT ("Notice Letter"). A true and correct copy of the Notice Letter is attached hereto as **Exhibit "C"** and incorporated herein by this reference as though fully set forth herein.

11.    On or about June 3, 2005, AGLIC and ZURICH, in good faith and pursuant to the Performance Bond, entered into an agreement with CENTEX-GILFORD to make payment to CENTEX-GILFORD in the amount of $275,201.00 representing the difference between the remaining SUBCONTRACT funds and the total cost of all completion contracts (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit "D"** and incorporated herein by this reference as though fully set forth herein. A true and correct copy of the check issued by ZURICH on behalf of AGLIC to CENTEX-GILFORD in the amount of $275,201.00 as part of the Settlement Agreement is attached hereto as **Exhibit "E"** and incorporated herein by this reference as though fully set forth herein.

12.    Paragraph 2 of the Indemnity Agreement between ZURICH, AGLIC, DAVID

CROSS and DIANA CROSS provides:

> The Indemnitors will exonerate, indemnify, and hold harmless the
> Surety against any and all liability, loss, cost, damages, fees of
> attorneys, engineers and/or other expenses which the Surety may
> sustain or incur by reason of, or in consequence of the execution of
> such Bonds and any renewal, continuation or successor thereof,
> including but not limited to sums paid or liabilities incurred in
> settlement of, and expenses paid or incurred in connection with
> claims, suits or judgements under such Bonds, expenses paid or
> incurred in enforcing the terms hereof, in procuring or attempting
> to procure release from liability, or in recovering or attempting to
> recover losses or expenses paid or incurred, as aforesaid. . . . The
> Surety shall be entitled to for any and all disbursements made by it
> in good faith in and about the matters herein contemplated by this
> Agreement under the belief that it is or was liabile for the sums and
> amounts so disbursed, or that it was necessary or expedient to
> make such disbursements, whether or not such liability, necessity
> or expediency existed; and that the vouchers or other evidence of
> any such payments made by the Surety shall be prima facie
> evidence of the fact and amount of the liability to the Surety.

13.    Pursuant to paragraph 2 of the Indemnity Agreement, on or about February 8,

2008, AGLIC and ZURICH demanded payment from DAVID CROSS and DIANA CROSS in

the amount of $361,718.16, including the original payment of $275,201.00 to CENTEX-

GILFORD, interest in the amount of $81,404.46 and legal fees of $5,112.70.

14.    DAVID CROSS and DIANA CROSS failed to provide any payment pursuant to

the February 8, 2008 demand, and paragraph 2 of the Indemnity Agreement.

15.    AGLIC and ZURICH have performed all of the terms, covenants and conditions

on its part to be performed under the terms of the Indemnity Agreement.

16.    By reason of the above actions and failures and refusals, the Defendants DAVID

CROSS and DIANA CROSS have defaulted under the terms and conditions of the Indemnity

Agreement.

17.    DAVID CROSS and DIANA CROSS have breached the Indemnity Agreement by, among other things, failing to indemnify AGLIC and ZURICH for all losses under the Performance Bond.

## SECOND CAUSE OF ACTION

### (Exoneration and Specific Performance)

18.    AGLIC and ZURICH incorporate herein the allegations of Paragraphs 1 through 17, inclusive, as though fully set forth herein.

19.    DAVID CROSS and DIANA CROSS entered into the Indemnity Agreement in consideration of, *inter alia*, the execution of the Performance Bond naming as principal, ICE CONTRACTORS.  Paragraph 2 of the Indemnity Agreement provides that DAVID CROSS and DIANA CROSS shall exonerate, indemnify and hold harmless AGLIC and ZURICH against any and all liability, loss, cost, damages, fees of attorneys, engineers and/or other expenses which the Sureties may sustain or incur by reason of, or in consequence of the Performance Bond.

20.    On or about April 30, 2004, CENTEX-GILFORD advised AGLIC and ICE CONTRACTORS of the latter's alleged default under the Performance Bond and asserted a claim against AGLIC on the Performance Bond for new agreements with completion contractors to perform remaining work under the SUBCONTRACT.

21.    On or about June 3, 2005, AGLIC and ZURICH, in good faith and pursuant to the Performance Bond, entered into an agreement with CENTEX-GILFORD to make payment to CENTEX-GILFORD in the amount of $275,201.00 representing the difference between remaining SUBCONTRACT funds and the total cost of all completion contracts as a result of ICE CONTRACTORS alleged default under the Performance Bond.

22.    Pursuant to paragraph 2 of the Indemnity Agreement, on or about February 8, 2008, AGLIC and ZURICH demanded payment from DAVID CROSS and DIANA CROSS in the amount of $361,718.16, including the original payment of $275,201.00 to CENTEX-GILFORD, interest in the amount of $81,404.46 and legal fees of $5,112.70.

23.    DAVID CROSS and DIANA CROSS failed to provide any payment pursuant to the February 8, 2008 demand, and paragraph 2 of the Indemnity Agreement.

24.    By reason of the above actions and failures and refusals, Defendants DAVID CROSS and DIANA CROSS have defaulted under the terms and conditions of the Indemnity Agreement.

25.    Plaintiffs ZURICH and AGLIC have and will continue to incur attorney's fees and other expenses and costs in connection with pursuit of its rights under the Indemnity Agreement, and the INDEMNITORS' breach of the Indemnity Agreement, all in amounts which cannot yet be fully determined.

26.    On information and belief, DAVID CROSS and DIANA CROSS may transfer assets in derogation of the legal and equitable rights of AGLIC and ZURICH. Specific performance is necessary to insure that AGLIC and ZURICH are indemnified pursuant to the express conditions of the Indemnity Agreement.

27.    Plaintiffs AGLIC and ZURICH have no plain, adequate and complete remedy at law, and jurisdiction is invoked to exonerate the Plaintiffs as sureties on the Performance Bond and for specific performance by the Defendants DAVID CROSS and DIANA CROSS pursuant to the Indemnity Agreement, all to the end that this Court, as a court of equity, may determine the issues in this action and afford to the Plaintiffs, AGLIC and ZURICH, a complete and adequate remedy against Defendants DAVID CROSS and DIANA CROSS.

28.    AGLIC and ZURICH's losses and/or reserves at the present time are $361,718.16.

### THIRD CAUSE OF ACTION

### (*Declaratory Relief*)

29.    Plaintiffs AGLIC and ZURICH incorporate herein the allegations of Paragraphs 1 through 28, inclusive, as though fully set forth herein.

30.    An actual controversy has arisen and now exists between Plaintiffs, AGLIC and ZURICH, and Defendants, DAVID CROSS and DIANA CROSS, in that Plaintiffs contend and Defendants deny that pursuant to the Indemnity Agreement, Defendants DAVID CROSS and DIANA CROSS are obligated to indemnify Plaintiffs, AGLIC and ZURICH, for the losses, costs, fees and expenses related to and/or arising from the Performance Bond issued to ICE CONTRACTORS.

31.    AGLIC and ZURICH desire a judicial determination of the respective rights and duties of Plaintiffs, AGLIC and ZURICH, and Defendants, DAVID CROSS and DIANA CROSS, with respect to the Indemnity Agreement. In particular, AGLIC and ZURICH desire a declaration that as a consequence of having executed the subject Indemnity Agreement, Defendants DAVID CROSS and DIANA CROSS are obligated to indemnify Plaintiffs, AGLIC and ZURICH, for the losses, costs, fees and expenses incurred by AGLIC and ZURICH pursuant to the Performance Bond and allowing interest accruing thereon.

WHEREFORE, AGLIC and ZURICH respectfully requests that this Court enter judgment in favor of AGLIC and ZURICH and against DAVID CROSS and DIANA CROSS :

(a)    On the *first cause of action* in an amount to be determined at trial but in no event less than $361,718.16, plus additional costs, interest, attorney's fees, according to proof at trial, and such other relief as this Court deems just and

appropriate;

(b)    On the *second cause of action* requiring Defendants DAVID CROSS and DIANA CROSS to provide payment to AGLIC and ZURICH in an amount to be determined at trial but in no event less than the amount of $361,718.16 as required by paragraph 2 of the Indemnity Agreement; Requiring the Defendants DAVID CROSS and DIANA CROSS to place with the Plaintiffs, AGLIC and ZURICH, sufficient assets in money, property, or security - interests as determined by the Plaintiffs to be ample security for its losses and/or reserves under the Performance Bond; Requiring Defendants DAVID CROSS and DIANA CROSS to render Plaintiffs AGLIC and ZURICH a full and complete accounting of all assets owned by each individual or in which each individual has an interest, as well as an accounting of any outstanding payment obligations; Enjoining and restraining the Defendants DAVID CROSS and DIANA CROSS from selling, transferring, or otherwise disposing of or liening any asset and/or property, which they may own, have an interest in, or control, and further enjoining and restraining the Defendants DAVID CROSS and DIANA CROSS from allowing any asset and/or property, which they may own, have an interest in, or control, to be encumbered; Granting to Plaintiffs AGLIC and ZURICH a lien upon all assets and property, including realty, personalty and mixed, owned by the Defendants or for which Defendants have an interest, such lien or liens shall secure Plaintiffs AGLIC and ZURICH against any loss that they may sustain or incur by virtue of having executed the Performance Bond and in reliance upon the Indemnity

Agreement; Requiring Defendants DAVID CROSS and DIANA CROSS to

indemnify and exonerate Plaintiffs AGLIC and ZURICH for all liabilities,

losses and expenses incurred as a result of Plaintiffs AGLIC and ZURICH

having executed the Performance Bond and in reliance upon the Indemnity

Agreement, in the amount of $361,718.16;

(c)     On the *third cause of action* declaring the respective rights and duties of

Plaintiffs, AGLIC and ZURICH, and Defendants, DAVID CROSS and

DIANA CROSS, with respect to the Indemnity Agreement, and in particular, a

declaration that as a consequence of having executed the subject Indemnity

Agreement, Defendants DAVID CROSS and DIANA CROSS are obligated to

indemnify Plaintiffs, AGLIC and ZURICH, for the losses, costs, fees and

expenses incurred by AGLIC and ZURICH pursuant to the Performance Bond

and allowing interest accruing thereon, and

(d)     Awarding Plaintiffs costs, interest, attorney's fees and such other relief as this

Court deems just and appropriate.

Dated: June 10, 2008

Respectfully submitted,
**CANFIELD MADDEN & RUGGIERO, LLP**
Attorneys for Plaintiffs

By: John P. Ruggiero (JR 9834)
1461 Franklin Avenue
Garden City, NY 11530
(516) 294-4180
          and
WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
Attorneys for Plaintiffs
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
(703) 749-1000



# ZURICH

KNOW ALL MEN BY THESE PRESENTS that whereas the undersigned, hereinafter called Indemnitors, have requested and do hereby request ZURICH INSURANCE COMPANY or AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, as the case may be, any one or all hereinafter referred to as Surety, to execute or procure the execution of such bonds, undertakings, or recognizance (all of which are hereinafter included within the term "Bond or Bonds"), on behalf of the Principal, as have been and such as may hereafter be applied for directly or through an agent, attorney or other representative or required, solely or as co-adventurer with others, by any of the Indemnitors or by any person, firm, corporation or association whose name shall, for that purpose, have been furnished to the Surety by any of the Indemnitors, it being understood and agreed that this instrument shall cover all Bonds so applied for and executed, whether or not this instrument is referred to or mentioned in connection therewith; and, whereas, the undersigned understand that the Surety expressly requires the delivery of this Indemnity Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining from canceling said Bonds;

NOW THEREFORE, in consideration of the premises and of the execution or continuance of such Bonds, the Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, do hereby jointly and severally covenant and agree with the Surety, its successors and assigns, as follows:

1.  The Indemnitors will pay, when due, all premiums and charges for each of such Bonds in accordance with the Surety's rates in effect on the date such Bond becomes effective, as long as liability thereunder shall continue, and until the Surety is furnished with evidence satisfactory to the Surety of its discharge or release from the Bonds, or of all liability by reason thereof.

2.  The Indemnitors will exonerate, indemnify, and hold harmless the Surety against any and all liability, loss, cost, damages, fees of attorneys, engineers and/or other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits or judgments under such Bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid. The Indemnitors will indemnify the Surety against any and all liability, loss, damages, fees of attorneys, and any other expenses which the Surety may sustain or incur by reason of or in consequence of reliance upon representations made by the Indemnitors regarding defenses available to Principal and/or Surety to claims made against any such Bonds. The Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

3.  To further protect, exonerate and save harmless the Surety, Indemnitors shall pay over to the Surety, its successors and assigns, all sums of money which the Surety shall pay or cause to be paid or may be liable to pay by reason of its execution of such Bond or other obligations, or on account of any demands, claims, liabilities, damages, costs, charges and expenses of whatever kind or nature in connection therewith, such payment to be made to the Surety as soon as Surety notifies Indemnitor to deposit such funds, whether or not the Surety shall have paid out such sum or any part thereof or not; and Surety is hereby authorized to use such funds, or any part thereof, in payment or settlement of any such demand, claim, liability, loss, charges, costs and expense or other obligations Indemnitors may be liable to Surety under the terms of this Agreement. Surety shall have no obligation to invest or otherwise provide interest on such funds paid to Surety by Indemnitor and Surety may commingle the funds with other funds of the Surety. Surety may apply any unused funds as collateral security to any other Bond or obligation of the Indemnitor under this Agreement.

4.  If any such Bond is given in connection with a contract, the Surety in its sole discretion is hereby authorized, but not required, (a) to consent to any change in the contract or in the plans and specifications relating thereto; (b) to make or guarantee advances or loans for the purposes of the contract without any obligation to see to the application thereof, it being understood that the amount of all such advances or loans shall be conclusively presumed to be a loss hereunder for which the Indemnitors are liable; (c) in the event of any default in the performance of the contract, or the breach of this Agreement or of any Bond connected therewith, or the failure to diligently prosecute the work under any contract, or to pay for labor and material used in the prosecution of the contract, or in the event work has ceased or been suspended on any contract or contracts covered by any said Bonds, to take possession of the work under the contract and at the expense of the Indemnitors, to complete the contract or cause the same to be completed or to consent to the completion of it, or make payment to the owner in satisfaction of its obligations, and to take any other action which the Surety may deem expedient. In the event that the Surety takes possession of the work as above provided, the Indemnitors hereby release and discharge the Surety, in this connection, from all liability for its actions and omissions.

5.  The Indemnitors hereby assign, transfer, pledge and convey to the Surety (effective as of the date of each such Bond, but only in the event of default, breach or failure as referred to in preceding Section 4), as collateral security, to secure the obligations hereunder and any other indebtedness and liabilities of the Indemnitors to the Surety, all of their rights under the contracts, referred to in such Bonds, including their right, title and interest in and to (1) all subcontracts let in connection therewith and such subcontractor's Surety Bonds, (2) all machinery, plant, equipment, tools and materials which shall be upon the site or sites of the work or elsewhere for the purposes of the contracts, including all materials ordered for the contracts, and (3) any and all sums due or to become due on such contracts and on all other contracts, bonded or unbonded, in which any or all of the Indemnitors have an interest; and (4) all actions, causes of actions, claims and demands whatsoever which the Principal may have in anyway arising out of or relating to such Bond, or contract covered by such Bond; and (5) All actions, causes of actions, claims and demands whatsoever which the Principal may have or acquired against any owner in connection with or on account as any and all Principals referred to in the Bonds.

6.  The Surety may at its option, file or record this Agreement or any other document executed by any or all of the Indemnitors, individually or jointly, in connection with application, issuance or execution of any Bond or Bonds, as a Security Agreement or as part of a financing statement or as notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute or regulation of any jurisdiction or agency, but that the filing or recording of such document shall be solely at the option of the Surety and that the failure to do so shall not release or impair any of the obligations of the Indemnitors under this Agreement. Any copy of this Agreement certified by the Surety, so to be, shall be considered for purposes of filing as a financing statement, an original copy.

*EXHIBIT A*

7. Any Indemnitor who is a Principal on any such Bond agrees and hereby expressly declares that all funds due or to become due under any contract covered by a Bond are trust funds, whether in the possession of the Principal or another, for the benefit and payment of all persons to whom the Principal incurs obligations in the performance of such contract for which the Surety would be liable under the Bond. If the Surety discharges any such obligation it shall be entitled to assert the claim of such person to the trust funds. Principal shall, upon demand of the Surety and in implementation of the trust or trusts hereby created, open an account or accounts with a bank or similar depository designated by the Principal and approved by the Surety, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received pursuant to said contract or contracts. Withdrawals from such account shall be by check or similar instrument signed by the Principal and countersigned by a representative of the Surety. Said trust or trusts shall terminate on the payment by Principal of all the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of 20 years from the date hereof, whichever shall first occur.

The Principal agrees and hereby expressly declares that title to all materials and supplies specially ordered or fabricated for any contract covered by a Bond shall be held in trust for the benefit of the owner of the improvement being constructed, or the Surety, as their interests may appear, and that possession of such materials shall be subject to the direction of owner and Surety.

8. The Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors or any one of them on any such Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, absent fraud, shall be final and binding upon the Indemnitors. Further, the Surety shall have the right to respond in damages, to any demand or claim by an Owner, in the event of any breach, delay or default, rather than making arrangements for completion of the work or to entering into a takeover agreement and/or completing the work with a completion contractor. An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety, or the copies of the checks or drafts for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety such amounts, with interest from the date of payment.

9. The Indemnitors hereby authorize the Surety in its sole discretion to do the following: (a) from time to time to make or consent to any change in, or issue any substitute for or renewal of, any such Bond, or in any contract referred to in any such Bond, and this instrument shall apply to such substituted or changed Bond or renewal; (b) if any such Bond is given in an action or proceeding in any court, to recognize any attorney of record in such action or proceeding for any party thereto at the date of the execution of such Bond as the authorized representative of such party until the Surety shall have been fully discharged from liability under such Bonds; (c) to take such other actions as the Surety may deem expedient to obtain release from liability from any such Bond.

10. The Indemnitors hereby agree that they shall at all times, keep themselves intimately familiar with the financial condition of the Principal on any such Bond, as well as the status of all projects bonded by the Surety. The Indemnitors hereby waive notice of the execution of any such Bonds or of any act, fact or information coming to the notice or knowledge of the Surety concerning or affecting its rights or liabilities under any such Bond or rights or liabilities of the Indemnitors hereunder, notice of all such being hereby expressly waived.

11. If the Surety shall procure any other company or companies to execute or join with it in executing, or to reinsure, any such Bonds, this instrument shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give to it or them a direct right of action against the Indemnitors to enforce this instrument and, in that event, the word "Surety," wherever used herein, shall be deemed to include such company or companies, as their respective interests may appear.'

12. The liability of the Indemnitors hereunder shall not be affected by the failure of any party to sign any such Bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or indemnitor, nor the return or exchange of any collateral that may have been obtained; and if any party signing this instrument is not bound for any reason, this obligation shall still be binding upon each and every other party.

13. Separate suits may be brought on this Agreement against any or all of the undersigned and the bringing of a suit or the recovery of a judgment upon any cause of action shall not prejudice nor bar the bringing of other suits upon other causes of action whether theretofore or thereafter arising. This Agreement shall be liberally construed so as to protect, exonerate and indemnify the Surety. The Surety is hereby expressly authorized to settle any claim based upon this Agreement with any one or more of the undersigned individually, and such settlement or compromise shall not affect the liability of any of the rest of the undersigned.

14. The Indemnitors waive any defense that this Agreement was executed subsequent to the date of any such Bond, admitting and covenanting that such Bond was executed pursuant to the Indemnitor's request and in reliance on the Indemnitor's promise to execute this Agreement. In the event any part of this Indemnity Agreement shall be void under the law of the place governing the construction hereof, then such part only shall be considered as deleted and the remainder of this Agreement shall endure in full force and effect.

15. The Surety, at its option, may decline to execute or participate in or procure the execution of any such Bonds. If the Surety shall execute a bid or proposal Bond, or any similar undertaking, it may nevertheless decline to execute any and all Bonds that may be required in connection with any award made on the bid or proposal for which the Bond or undertaking is given, and the Principal shall have the right to procure from another Surety any Bonds that maybe required in connection with any award under the bid or proposal for which the Bond or undertaking is given, and such declination shall not diminish or alter the liability that may arise by reason of having executed the bid or proposal Bond.

16. Wherever used in this instrument the plural term shall include the singular and the singular shall include the plural, as the circumstances require.

17. The Indemnitors irrevocably consent to the exclusive jurisdiction of the Courts of the County and State of New York and the Federal Courts of the Southern District of New York in all matters affecting or arising out of their obligations under this Agreement and agree the construction, validity and performance of this Agreement shall be governed by the laws of the State of New York.

18. Whereas, the Indemnitors have a substantial material and beneficial interest in the obtaining of said Bonds on behalf of various related companies, it is agreed that this Agreement shall apply to any Bonds executed on behalf of any subsidiary, subsidiary of a subsidiary whether direct or indirect, affiliated company or partnership, joint venture or corporation of any Indemnitor or unto others not named herein, now existing or hereafter formed or acquired, and whether partially or wholly owned or controlled, as fully as if the names and signatures of such subsidiaries or affiliates appeared herein as Indemnitors.

19. The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their Attorney-in-Fact with the right, but not the obligation, to exercise all of the rights of Indemnitors or any of them to make, execute and deliver any and all additional or other assignments, documents or papers, including but not limited to the execution of instruments referred to in Paragraph 5, and the endorsement of checks or other instruments representing payment of contract monies, deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the

Surety under all other provisions of this Agreement. The Indemnitors hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as such Attorney-in-Fact.

20. The Indemnitors hereby waive and abandon, so far as their respective obligations under this Agreement are concerned, all rights to claim any of the property, including the respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession.

21. The obligations of the Indemnitors hereunder shall be continuous; provided, however, that any of the Indemnitors may give the Surety not less than 30 days written notice by registered mail of his desire to terminate this Agreement but any such notice of termination shall not operate, modify, bar, discharge, limit, affect, or impair his liability hereunder on or by reason of any such Bond executed prior to the termination of such 30 days.

22. The Indemnitor will furnish to the Surety such information as it may request from time to time concerning the financial condition of the Indemnitor, the status of work under any contract covered by a Bond, the condition of the performance of any such contract, and the payment of obligations incurred in connection therewith. The Surety is authorized to visit the project sites described in the contracts, to obtain access to all job records and personnel to determine the status of the work on the contracts, and to obtain any and all other information deemed necessary in the sole discretion of the Surety. The Surety may at reasonable times and places and from time to time, examine and copy the books, records and accounts of the Indemnitors. The Indemnitors will immediately notify Surety of any event which may adversely affect the financial condition of Indemnitors or may subject Surety to liability, loss, damages, fees of attorneys or other expenses by reason or in consequence of such Bonds. The Surety may obtain information concerning the affairs and operations of the Indemnitors and any transaction between or among the Indemnitors from any banks, depositories, owners on the Bonds, material men, supply houses, credit reporting agencies or other persons, all of whom are hereby expressly authorized to furnish such information to the Surety.

23. If any proceeding is brought against the Surety in which the Surety desires to join any one of the Indemnitors by reasons of the undertaking in this Agreement, each of the Indemnitors agrees that he will, upon written notice of the Surety, voluntarily appear in such proceedings and accept service of process and other papers either personally or by an attorney of the undersigned's choice. If any of the undersigned fails upon such a notice from the Surety so to appear, such undersigned hereby designates the Secretary of the State or Territory in which proceedings are pending as his agent for the service of process in any such proceedings. Moreover, with respect to any action brought by the Surety on this Agreement in a jurisdiction in which one or more of the undersigned reside, are domiciled, are doing business or are found, each of the undersigned who are not in the jurisdiction hereby designates each of the undersigned in such jurisdiction as his agent to receive service on his behalf service of process in such action.

24. Notice to or service of process on Indemnitors may be made by certified mail to any address set forth below or to any change of address which Indemnitors shall have given by written notice to Surety.

25. This writing constitutes the entirety of the Agreement between Principal, Indemnitors, and Surety regarding the execution of Bonds and handling of claims against such Bonds. It may not be added to, changed, or modified orally. No addition, change, or modification shall be effective unless specifically agreed in writing.

26. This Agreement is in addition to and not in lieu of any prior indemnity agreements which have or may have been executed on behalf of the Surety by the Indemnitors.

IN TESTIMONY WHEREOF, the Principal and the Indemnitors, intending to be legally bound hereby, have hereunder set their hands and affixed their seals this _2 31_ day of _JANUARY 2003_.

Witness or Attest

By: _[signature]_

David Cross, Secretary
Type or Print Name and Title

_[signature]_
Signature, Individually

Diana Cross
Type or Print Name and Title

Social Security Number: 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

Address: 1316 Morraine Place - Heath, TX 75032

ICE Contractors, Inc. _____ (SEAL)
and/or any present or future subsidiary or any
subsidiary of a subsidiary, whether alone or in joint
venture with others not named herein (and/or any
other corporation, partnership or person upon written
request of the corporation)

By: _[signature]_

Diana Cross, President
Type or Print Name and Title

Address: 103 Gross Rd. - Mesquite, Texas 75149

_[signature]_
Signature, Individually

David Cross
Type or Print Name and Title

Social Security Number: 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

Address: 1316 Morraine Place - Heath, TX 75032

## COPY OF RESOLUTION OF BOARD OF DIRECTORS AUTHORIZING CORPORATE INDEMNITY OR SUBORDINATION

At a ___SPECIAL___ meeting of the Board of Directors of ICE Contractors, Inc.
(Regular or Special)

(hereinafter called Corporation), duly called and held on the ___31___ day of ___JANUARY___, 20 03, a quorum being present, the following Preamble and Resolution were adopted:

"Whereas, this Corporation is materially interested through stock ownership or other interest in transactions appertaining to the general conduct of its business, including but not limited to various contracts or agreements in connection with which ICE Contractors, Inc. and/or any present or future subsidiary or any subsidiary of a subsidiary, whether alone or in joint venture with others not named herein (and/or any other corporation, partnership or person upon written request of the corporation) (hereinafter called Principal) has applied or will apply to Zurich Insurance Company or American Guarantee and Liability Insurance Company (hereinafter called Surety), for certain bonds or undertakings of whatever kind or nature;" and

"WHEREAS , the Surety is willing to execute such bonds or undertakings as Surety upon the written indemnity of this Corporation or written subordination of moneys owed to this Corporation"

"RESOLVED, that

Diana Cross
David Cross
President
Secretary

be and they are hereby authorized and empowered to execute any indemnity or subordination agreement or agreements required by the Surety as consideration for the execution by it of bonds or undertakings of whatever kind or nature on behalf of the Principal described;"

"RESOLVED FURTHER, that the said officers be and are hereby authorized and empowered, at any time prior or subsequent to the execution, by said Surety of any such bonds or undertakings, to execute any and all amendments to said Indemnity or subordination agreement or agreements; and to execute any other or further agreements relating to any such bonds or undertakings or to any collateral that may have been deposited with the Surety in connection therewith; and to take any and all other actions that may be requested or required by the Surety in the premises; and that any and all actions previously taken by the said officers of the kind and nature above described be and are hereby ratified and accepted."

I, David Cross, Secretary of the Corporation, have compared the foregoing preamble and resolution with the original thereof, as recorded in the Minute Book of said Corporation, and do certify that the same are correct and true transcripts therefrom, and of the whole of said original preambles and resolutions, which may have been amended, annulled or revoked, and are still in full force and effect.

Given under my hand and the seal of the Company, in the City of ___DALLAS___ State of ___TEXAS___ this ___31___ day of ___JANUARY___, 20 01.

Affix Seal

___David Cross___
David Cross                    ;Secretary

CORPORATE ACKNOWLEDGMENT

State of: _____ TX _____
County of: ___ Dallas _____ } S.S. :

On this 31 day of Jan , 20 03 before

me personally appeared Dinna Cross

known to me to be the President

of ICE Contractors, Inc., the corporation executing the above
instrument, and acknowledged said corporation to be free and
voluntary act and deed of said corporation, for the uses and
purposes therein mentioned and on oath stated that the seal affixed
is the seal of said corporation and that it was affixed and that said
instrument was executed by order of the Board of Directors of
said corporation.

_____
Notary Public

April 16 2005
_____
Commission Expires

> MOHAMMAD M. ABDALLA
> MY COMMISSION EXPIRES
> APRIL 16, 2005

PERSONAL ACKNOWLEDGMENT

State of: ___ TX _____          State of: ___ TX _____
County of: Dallas          } S.S. :     County of: Dallas          } S.S. :

On this 31 day of Jan , 20 03     On this 31 day of Jan , 20 03

before me personally appeared David Cross     before me personally appeared Dinna Cross

to me known and known to me to be the individual(s) described in     to me known and known to me to be the individual(s) described in
and who executed the foregoing agreement and acknowledged that     and who executed the foregoing agreement and acknowledged that
the execution of the same was for the purposes, considerations and     the execution of the same was for the purposes, considerations and
uses therein set forth as a free and voluntary act and deed.     uses therein set forth as a free and voluntary act and deed.

_____     _____
Notary Public                Notary Public

April 16 2005               April 16 2005
_____     _____
Commission Expires            Commission Expires

> MOHAMMAD M. ABDALLA
> MY COMMISSION EXPIRES
> APRIL 16, 2005

> MOHAMMAD M. ABDALLA
> MY COMMISSION EXPIRES
> APRIL 16, 2005

# CENTEX-GILFORD, A JOINT VENTURE
## EXHIBIT E
SUR3980978
## PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

That Uwe Ice Contractors, Inc of Ice Contractors, Inc. Ice Contractors, Ice Contractors, Inc d/b/a an individual / partnership / corporation organized under the law of the State of Texas hereinafter called the Subcontractor, and American Guarantee & Liab Ins Co of One Liberty Plaza a corporation organized under the laws of the State of New York, hereinafter called the Surety, are held and firmly bound unto Centex-Gilford, a Joint Venture of Dallas, Texas, hereinafter called the General Contractor, in the sum of $647,800.00 (Six Hundred Forty Seven Thousand Eight Hundred Dollars) for the payment whereof the Subcontractor and the Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

Whereas, the Subcontractor has, by means of a written agreement dated January 28, 2003, entered into a Subcontract, No. 047-DULAIR-070500-S hereinafter called the Subcontract, with General Contractor for work at the project known as Main Terminal Rehab and Southeast Basement Package 7 , Fort Basement Extension Solicitation Number 1-99-C099; Washington Dulles International Airport which said Subcontract is incorporated herein by reference and made a part hereof for all purposes.

NOW THEREFORE, the condition of this obligation is such that if the Subcontractor shall faithfully perform and fulfill the Subcontract on its part and shall fully indemnify and save harmless the General Contractor from all costs, damages, expenses and attorney's fees which it may suffer by reason of failure so to do and shall fully reimburse and repay the General Contractor all outlay and expense which the General Contractor may incur in making good any such default, then this obligation shall be null and void; otherwise, it shall remain in full force and effect;

AND PROVIDED, that any alterations which may be made in the terms of the Subcontract or in the work to be done under it, or the giving by the General Contractor of any extension of time for the performance of the Subcontract, or any other forbearance on the part of either the General Contractor or the Subcontractor to the other shall not in any way release the Subcontractor and the Surety, or either of them, their heirs, executors, administrators, successors or assigns, from their liability hereunder, notice to the Surety of any such alteration, extension or forbearance being hereby waived.

AND PROVIDED FURTHER, that any increase in the Subcontract amount shall automatically result in a corresponding increase in the penal amount of the bond without notice to or consent from the Surety, such notice and consent being hereby waived. Decreases in the Subcontract amount shall not, however, reduce the penal amount of the Bond unless specifically provided in said Change Order.

WITNESSED AND SEALED this ___28th___ day of ___JANUARY___ A.D. 2003.

WITNESSES:

Ice Contractors, Inc
Subcontractor

By:_____

Typed Name_____

Title_____

American Guarantee & Liab Ins Co
Surety

By:_____

Typed Name___Maria Gonzalez___

Title___attorney-in-fact___

COUNTERSIGNED: (If applicable)

Signature/State Resident Agent
SHAWN WYATT
Type or Print Name

TO: Mike Gorman.
From: Adrian Braganza

3

EXHIBIT B

# CENTEX-GILFORD, A JOINT VENTURE
## EXHIBIT E
## PAYMENT BOND

BOND #: SUR3980978

**KNOW ALL MEN BY THESE PRESENTS:**

That I/we Ice Contractors, Inc or Ice Contractors, Inc. Ice Contractors, Ice Contractors, Inc a/b/n an Individual / partnership / corporation organized under the laws of the State of __Texas__, hereinafter called the Subcontractor, and American Guarantee & Liab Ins Co One Liberty Plaza a corporation organized under the laws of the State of __New York__, hereinafter called the Surety, are held and firmly bound unto Centex-Gilford, A Joint Venture, hereinafter called the General Contractor, in the sum of $647,800.00 (Six Hundred Forty Seven Thousand Eight Hundred Dollars) for the payment whereof the Subcontractor and the Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

Whereas, the Subcontractor has, by means of a written agreement dated __January 20, 2003__, entered into a Subcontract, No. 842-DULLAIR-020800-S hereinafter called the Subcontract, with General Contractor for work at the project known as Main Terminal Rehab and Southeast Basement Package 7, East Basement Extension Solicitation Number 1-09-C090; Washington Dulles International Airport, which said Subcontract is incorporated herein by reference and made a part hereof for all purposes.

**NOW THEREFORE**, the condition of this obligation is such that if the Subcontractor shall make payment to all claimants for all costs and expenses resulting from the performance of his Subcontract and for all labor, materials, equipment, supplies, services and the like, used or reasonably required for use in the performance of this Subcontract, for all or any part of which the General Contractor or Owner is liable, failing which such claimants shall have a direct right of action against the Subcontractor and Surety under this obligation, subject to the General Contractor's priority, and/or the General Contractor shall have the right to bring an action against the Subcontractor and Surety on behalf of unpaid claimants, then this obligation shall be null and void, otherwise, it shall remain in full force and effect;

**AND PROVIDED**, that any alterations which may be made in the terms of the Subcontract or in the work to be done under it, or the giving by the General Contractor of any extension of time for the performance of the Subcontract, or any other forbearance on the part of either the General Contractor or the Subcontractor to the other shall not in any way release the Subcontractor and the Surety, or either of them, their heirs, executors, administrators, successors or assigns, from their liability hereunder, notice to the Surety of any such alteration, extension or forbearance being hereby waived.

**AND PROVIDED FURTHER**, that any increase in the Subcontract amount shall automatically result in a corresponding increase in the penal amount of the bond without notice to or consent from the Surety, such notice and consent being hereby waived. Decreases in the Subcontract amount shall not, however, reduce the penal amount of the Bond unless specifically provided in said Change Order.

**WITNESSED AND SEALED** this __28th__ day of __January__, A.D. 2003.

WITNESSES:

_____

_____

Ice Contractors, Inc
Subcontractor

By_____

Typed Name_____

Title_____

American Guarantee & Liab Ins Co
Surety

By_____

Typed Name Maria Gonzalez

Title attorney-in-fact

COUNTERSIGNED: (If applicable)

_____
Signature/State Resident Agent
Shawn Wyatt
Type or Print Name

2

**CENTEX-Gilford**
*A Joint Venture*

April 30, 2004

VIA CERTIFIED MAIL # 7003 2260 0002 1759 5139

Ms. Diana Cross
ICE Contractors, Inc.
103 Gross Road
Mesquite, TX  75149

Subject:     Subcontract between Centex-Gilford, A Joint Venture,
             and ICE Contractors, Inc.
    Re:      Metropolitan Washington Airports Authority, Main Terminal Rehab
             And Southeast Basement Package 7, East Basement Extension

Reference:   Subcontract Agreement dated January 20, 2003

Dear Ms. Cross:

Pursuant to Article 13(A) of the Subcontract Agreement, Centex-Gilford hereby declares ICE Contractors, Inc. to be in default of its Subcontract obligations.

The basis for the default is your failure to cure several prior 72 hour notices and the abandonment of the Project.

Further, you are notified that Centex-Gilford shall re-procure the labor and materials required to complete the work.

Centex-Gilford will seek recovery from you and your Surety of all costs, losses, damages, or expenses it incurs as a result of your default.

Sincerely,

Steven R. Smithgall
Executive Vice President
Chief Operating Officer

cc:    American Guarantee & Liability Insurance Co.

**Mailing Address**
P.O. Box 16798
Washington, D.C. 20041

**Job Office**
Dulles International Airport
23835 Wind Sock Drive • Dulles, VA 20166
telephone 703.572.6300 • fax 703.572.6334

*EXHIBIT C*

**CENTEX**-Gilford
*A Joint Venture*

July 28, 2005

Received

JUL 2 9 2005

CLAIMS

Mr. Adrian Braganza
American Guarantee and Liability Insurance Company
c/o **Zurich North America**
Surety and Financial Claims
P.O. Box 17138
Baltimore, MD 21297

Re:     Dulles Airport - Virginia
          Package 7 - Terminal Rehab & South Basement, Package 8 - East Basement Extension
Subject:     Principal - ICE Contractors, Inc.
          Bond No.  SUR3980978

Dear Mr. Braganza:

Enclosed please find a copy of the fully executed agreement on the above-referenced subject.
We appreciate your cooperation and professionalism throughout resolution of this matter.

Please contact the undersigned relative to any questions.  Final remittance can be directed to my
attention at the PO Box address on this letterhead.

Sincerely,

CENTEX-Gilford *A Joint Venture*

Jim Fredmund
Project Executive

**Mailing Address**                         **Job Office**
P.O. Box 16798                     Dulles International Airport
Washington, D.C. 20041          23835 Wind Sock Drive • Dulles, VA 20166
telephone 703.572.6300 • fax 703.572.6334

*EXHIBIT D*

## AGREEMENT

THIS AGREEMENT entered into this $\underline{3}$_ 0 day of June 2005, by and between ~~Zurich~~ ~~American Insurance Company~~ American Guarantee & Liability Insurance Company and its affiliates, predecessors and/or successors in interest, P.O. Box 17138, Baltimore, MD 21297, hereinafter referred to as ("Surety") and Centex-Gilford A Joint Venture, 3924 Pender Drive, Fairfax, VA 22030, hereinafter referred to as (Obligee").

## RECITALS

WHEREAS, on or about January 20, 2003 ICE Contractors Inc., hereinafter referred to as ("Principal") entered into a construction subcontract agreement entitled (the "Subcontract") with Obligee, pursuant to which Principal agreed to perform work necessary or incidentally required for the completion of that part of the demolition work covered by the Subcontract Documents as defined in the Subcontract, related to Dulles Airport Package 7 -Terminal Rehab & South Basement and Package 8 - East Basement Extension ( hereinafter referred to as the "Project"); and

WHEREAS, Principal and Surety made, executed and delivered to the Obligee a performance bond (the "Performance Bond") and a payment bond (the "Payment Bond"), both bonds numbered Bond SUR3980978, each in the penal sum of $ 647,800, dated January 28, 2003; and

WHEREAS, by letter dated April 30, 2004 Obligee advised Principal and Surety of default of the Subcontract; and

WHEREAS, in order to maintain planned progress on the Project, Obligee proceeded to enter into new agreements with completion contractors to perform remaining work under the Subcontract; and

WHEREAS, the Surety, pursuant to the Performance Bond, has agreed to make payment to Obligee in the total amount of $275,201 representing the difference between remaining Subcontract funds and the total of all completion contracts, as set forth in "Schedule A" attached hereto and made a part hereof; and

WHEREAS, payment is acceptable to Obligee and the parties desire to document the terms of such payment as set forth herein below:

NOW THEREFORE, in consideration of the terms provided herein, and other good and valuable consideration, and with the intent to be legally bound, the parties hereby agree as follows:

1.      Surety agrees to pay Obligee $275,201 representing the difference between the Contract Balance and the amount paid by Obligee to completion contractors, as set forth in "ScheduleA", attached hereto and made a part hereof.  Payment by Surety shall be made on a lump sum basis in the full amount of this Agreement, within 10 calendar days of executing this Agreement.

2.      Obligee does hereby expressly release, acquit and forever discharge Surety and its successors and assigns of any and all claims, rights, demands and/or causes of action Obligee has or may ever claim to have, now or in the future against Surety under its right to make claim on the Performance Bond furnished to Obligee.

3.      That Surety acknowledges and agrees that its Payment Bond furnished for said Project shall continue to remain in full force and effect in accordance with its original tenor, except that it is expressly agreed by and between Surety and Obligee that the scope and coverage of said Payment Bond shall be limited to and shall apply to claims for payment of subcontractors and/or suppliers of Principal for work performed prior to Principal's rejection of the Subcontract,

and that said Payment Bond shall not apply to nor cover any completion contractor nor any of their subcontractors and suppliers for any work performed and/or materials delivered after the date of Principal's rejection of the Subcontract.

4.    That for the aforementioned consideration, and to the extent of payment by Surety under this Agreement, Obligee by these presents does hereby assign unto Surety, its successors and assigns any and all rights, demands, claims and/or causes of action which Obligee has against Principal arising out of, as a result of and/or on the basis of said alleged default and breach of Principal to the said Subcontract for this Project, and Obligee gives Surety, its successors and assigns full power and authority for Surety's own use and benefit, but at its own cost, to ask, demand, collect, receive, compound and/or release, and in its name or otherwise to prosecute and withdraw any claims, suits or proceedings at law or in equity or otherwise, against Principal in its efforts to obtain recovery upon its rights under said assignment.

5.    That Surety does hereby release, acquit and forever discharge the Obligee of any claims, rights, demands and/or causes of action Surety, or Surety on behalf of Principal, has or may ever claim to have, now or in the future against Obligee and/or Project Owner.

6.    This Agreement contains the entire agreement and understanding among and between the parties hereto with respect to the subject matter hereof and supersedes and replaces all prior understandings and agreements both written and oral.

7.    The Parties agree that all notices hereunder are to be sent by facsimile or by certified mail to the following addresses and shall be deemed effective upon actual receipt:

> Zurich North America
> American Guarantee & Liability Insurance Company
> Attn: Adrian Braganza, Senior Claims Counsel
> P.O. Box 17138
> Baltimore, MD 21297

Page 3

Centex-Gilford, A Joint Venture
Attn: David Salzer, Vice President
3924 Pender Drive
Fairfax, VA 22030

8.      This Agreement may be executed in any number of counterparts, and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument. Signatures by facsimile shall be acceptable and sufficient to make the Agreement effective.

The Parties have caused this Agreement to be executed as of the first date written above.

American Guarantee & Liability Insurance Company

By:

Adrian A. Braganza
Senior Claims Counsel

Centex-Gilford, A Joint Venture

By:

David Salzer

Vice President

Page 4

Attach A - 1 of 2

## Centex-Gilford, A Joint Venture
Dulles International Airport, Package 7 & 8

### ICE Accounting Stats - FINAL

| | Total | Payments | B/Cs | Contract Balance | Reprocurement | Loss |
|---|---|---|---|---|---|---|
| **Original Contract/Scope** | | | | | | |
| Payments to ICE | $647,800 | ($317,198) | ($54,855) | $275,747 | $0 | $275,747 |
| Payments to subs/vendors by Joint Checks | | ($76,094) | $0 | ($76,094) | $0 | ($76,094) |
| Backcharge Cost Transfer Executed - BC not deducted | | $0 | ($26,520) | ($26,520) | $0 | ($26,520) |
| Reprocurement Items | | $0 | $0 | $0 | $453,598 | ($453,598) |
| **Executed Change Orders** | | | | | | |
| No Executed Change Orders | $0 | $0 | $0 | $0 | $0 | $0 |
| **Change Orders Issued** | | | | | | |
| Change Order #1 P-0688 | ($2,233) | $0 | $0 | ($2,233) | $0 | ($2,233) |
| **Approved Owner EW, Change Order Pending** | | | | | | |
| Proposals 0683, 0703, 0704, 0727, 0729, 0747, 0760 | $14,297 | ($8,131) | $0 | $6,166 | $0 | $6,166 |
| **Approved Internal EW, Change Order Pending** | | | | | | |
| Removal of Duct with Mastic | $2,586 | ($2,586) | $0 | $0 | $0 | $0 |
| **Pending EW, Change Order Pending** | | | | | | |
| Proposals 0532, 0782, 0810, 0656F | $5,656 | ($4,325) | $0 | $1,331 | $0 | $1,331 |
| **Contractual Scope Totals** | $668,086 | ($408,314) | ($81,375) | $178,397 | $453,598 | ($275,201) |

**Attach A - 2 of 2**

Centex-Gilford
Dulles International Airport Package 7 & 8

SUMMARY of Centex-Gilford Costs Incurred by ICE Contractors Default

| | |
|---|---:|
| Gilford Demo T&M Apr / May / Jun | $152,053.52 |
| Gilford Environmental | $2,048.20 |
| Centex Direct Field Labor | $7,639.22 |
| Centex Materials/Equip | $3,576.52 |
| Sawcutting (Subcontractor) | $10,532.00 |
| Anderson ( Debris haul off) | $2,249.00 |
| Gilford Bid - completion contract | $275,500.00 |
| | |
| | |
| Subtotal Total | $453,598.46 |
| **Grand Total** | $453,598.46 |

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

ZURICH Ⓩ

ZURICH AMERICAN INSURANCE COMPANY
ON BEHALF OF American Guarantee & Liability

P.O. BOX 1171

BALTIMORE          MD 21297 1171

CHECK NO. 1380033471

70-2368/719

DATE ISSUED: 08/01/05

VOID AFTER 90 DAYS

CLAIM NUMBER:  685-0150320 001 AB

AMOUNT: TWO HUNDRED SEVENTY-FIVE THOUSAND TWO HUNDRED ONE & 00/100 ----------- Dollars

Pay to
the Order of  Centex- Gilford - A Joint Venture

$275,201.00

Thomas A. Burke

**THE BACKGROUND IS COLORED**

LASALLE BANK N.A.
CHICAGO IL 60603

⑈1380033471⑈ ⑆071920232⑆ 559⑈888800⑈0⑈

60 221042    042  082603-19                    ⑈0027520100⑈

EXHIBIT E